Merritt *v.* Thompson.

---

## WILLIAM H. MERRITT *v.* MARTIN THOMPSON.

Where a suit was commenced to recover the proceeds of the sale, by the defendant as agent, of a ship owned jointly by him and the plaintiff, and which had been sold twice, first in California and again in China; and the plaintiff produced affidavits to show that the California sale was not *bonà fide*—that the alleged purchaser there bid in the vessel under the defendant's direction—that the defendant, thereupon, as the pretended agent of such purchaser, took her to China and effected a sale for a larger sum—and that the plaintiff was therefore entitled to share in the proceeds of the latter sale : *Held*, that an injunction, restraining, *pendente lite*, a disposal of the last mentioned proceeds—identified in the defendant's hands in specie, drafts and credits—should be continued, although the answer and affidavits on the part of the defendant denied the allegations concerning the California sale, provided, upon all the depositions used on the motion, it appears to the court that the plaintiff's case is not overborne. INGRAHAM, FIRST J., *dissenting.*

Where a claim in suit is for the proceeds of a sale made by the defendant as the plaintiff's agent, the same being identified in the defendant's hands as the very proceeds of the plaintiff's property ; the right to enjoin the use or disposal thereof, *pendente lite*, is unquestionable, although the fraudulent agent may be of sufficient responsibility to make reparation in damages.

*It seems*, that where a trust results from the sale of property owned jointly by the plaintiff and defendant, and the whole proceeds come to the hands of the defendant as the agent of both; a court will enjoin, upon the distinct ground of restraining a breach of trust and the commission of a fraud.

The injunction should only be laid upon the actual proceeds of the sale of the plaintiff's property, or upon funds misapplied even although invested in other property, if still capable of identification as in equity belonging to the plaintiff; but not upon moneys merely due to him in general account with the defendant.

Although the Code, in chap. 1, title 7, part 2, entitles a complainant to an order of arrest, when he establishes a fraud and breach of trust; he is not, by the provisions last referred to, necessarily limited to that remedy, where the case is such as to furnish grounds for an equitable interposition by injunction.

The 219th section of the Code applies as well to a foundation for injunction existing at or before the action is brought, as where the grounds thereof appear during the litigation.

The power to enjoin has been enlarged, rather than restricted, by the Code.

Although the right to file a bill in equity and to compel an answer for the mere purpose of a discovery, is abolished; yet power to obtain a discovery is in effect continued by the Code of Procedure.

This power is reserved in the provisions for the oral examination of the defendant by order, while the right of appeal to the defendant's conscience as to all the grounds of relief, is preserved by the rules of pleading and verification now in force.

Where the equitable power of the court is invoked to compel an accounting—to enforce a trust—to prevent a fraudulent misapplication of funds, or a misappropriation of property held as trustee; the jurisdiction is as ample now as before the Code.

Where the facts involved in a suit occurred at a distance, statements contained in alleged letters of third persons to one of the parties—although not strictly evidence—may be used temporarily, before time can be had to obtain formal proof thereof, to sustain, with other testimony, a remedy purely provisional.

REVIEW of an order modifying an injunction.

The complaint was divided into three counts. The first claimed to recover $22,117 as a balance remaining unpaid of $30,000, which the defendant was alleged to have received from persons unknown, for the use of the plaintiff, and as his agent, being the proceeds of a sale of two thirds of the ship "Mischief," such two thirds having belonged to the plaintiff, and having been sold by the defendant as his attorney.

The second count sought an accounting from the defendant

Merritt v. Thompson.

of the earnings of two thirds of the ship, to the time of her sale at Hong Kong, in China.

In the third count, the plaintiff alleged that the aforesaid proceeds of sale were in the defendant's hands, and consisted of specie, drafts, and credits, the greater part whereof had been deposited by the defendant to his own credit, and remained in the hands of Henry T. Morgan & Co., and of other bankers or agents of the defendant.

The complaint concluded with an averment of apprehension, and a prayer for an order of injunction and for the appointment of a receiver, for the purpose of restraining the use or disposal, by the defendant, of the proceeds of the alleged sale.

In an affidavit accompanying the complaint, the plaintiff made additional statements, among which were the following: That the plaintiff and defendant, the latter owning the remaining one third of the ship, had agreed to sell her to the firm of Ogden & Haynes, of San Francisco, for $29,000. That it being agreed, in the contract of sale, that the vessel should be delivered in California, she was dispatched to San Francisco, under charge of the defendant as master, who received from the plaintiff a power of attorney to act as his agent and to execute a bill of sale. That after the arrival at San Francisco, the defendant wrote to the plaintiff, first, that the purchasers were pleased with the ship, and he expected soon to remit the plaintiff's share of the proceeds; and afterwards, that, the purchasers having refused to take the vessel, the defendant had consulted with a friend and adviser, J. P. Haven, and had determined to effect a resale, intending, in case she did not realize more than $25,000, to himself bid her in, as she could (the letter added) be profitably employed in the China trade. That in the letter last mentioned, the defendant stated that whatever he did for himself he did for the plaintiff also, and their interests were identical. That the plaintiff subsequently received another letter, in which the defendant stated that the vessel had been sold at public auction, for the benefit of whom it might concern, to J. P. Haven, for $22,250; but the affidavit also stated, that the defendant, after such alleged sale,

effected insurance in his own name, and for his own account, for $32,000 and sailed with the ship to China, without making any remittance. That thereupon the plaintiff employed correspondents in California to make inquiries of J. P. Haven, who informed them that his purchase was for the defendant. That the defendant sold the ship at Hong Kong for $45,000, and returned to New York, where he stated, in an interview with the plaintiff, that the sale in China was for $30,000. That upon the plaintiff demanding two thirds of the proceeds of the last sale, at the rate of the sum last mentioned, and also two thirds of the ship's earnings on the voyage to China, the defendant claimed to appropriate to himself the earnings and the difference between the $22,250 and the $30,000, and acknowledged that the sale at San Francisco was in reality to him. That after the last sale, the defendant remitted $3,883 50, and afterwards paid on account $4,000, which two sums were all that the plaintiff ever received of the proceeds of the ship. That the alleged sale at San Francisco was fictitious; that the defendant, being an agent and attorney, could not become a purchaser. That the proceeds of the ship were received by the defendant in a fiduciary capacity. That even assuming the validity of the California sale, there would still be due to the plaintiff, on account of the proceeds thereof, $6,950. That rejecting that sale, there was owing to the plaintiff, on account of the proceeds of the China sale, the sum of $12,117, in case that sale was for $30,000, and the sum of $22,117, provided it was for $45,000. The affidavit concluded with stating that the defendant had deposited the proceeds of the last sale with Henry T. Morgan & Co.

An order of injunction was granted, restraining the defendant, his agents, attorneys, bankers, and tenants, from assigning or disposing of any moneys, effects or credits, under the defendant's control, or deposited to his credit, being a part of the proceeds of the sale of two thirds of the ship at Hong Kong.

The answer alleged, that the sale to J. P. Haven, at California, was *bonâ fide*, and that the defendant had no interest

therein. That the defendant made at San Francisco only a partial remittance of the proceeds of that sale, because the plaintiff was indebted to him in account, and also because he was obliged to give security in $18,000 upon bringing a suit (which was afterwards withdrawn) against Ogden & Haynes for the difference between the price fixed in their contract of purchase and the sum paid by Haven. That upon the voyage to Hong Kong, the defendant accompanied the ship as supercargo, but that she went in ballast with only eighty Coolies as steerage passengers, at $16 a head, and that wages, provisions, and insurance exceeded the receipts. That for the ship's earnings before the California sale, the plaintiff had been paid his share. An account was annexed to the answer making an apparent balance in the plaintiff's favor of $2,675 34, which the defendant offered to pay, provided the plaintiff would assent to the items in the account to the credit of the defendant.

In an affidavit, the defendant stated, that he had employed a person to bid up at the California sale, but that such person, after bidding $21,500, was taken ill, and thereupon Haven became the purchaser on his own account. That the sale at Hong Kong was for 30,000, to one C. B. Polhemus. That the balance in the hands of H. T. Morgan & Co. to the defendant's credit, was $13,000 and upwards, and that he was perfectly solvent, and able to respond to any judgment that might be awarded.

The answer and affidavits on the part of the defendant put in issue the principal allegations of the plaintiff. An order was granted to show cause why the injunction should not be vacated or modified, and in the meantime such modification was made as to allow the defendant to require H. T. Morgan & Co., and other parties holding moneys affected by the injunction, to pay them to the clerk of the court, to be temporarily deposited in the New York Life Insurance and Trust Company.

A hearing upon the order to show cause took place before INGRAHAM, FIRST J., who delivered the following opinion :

" With a view of complying with the wishes of the parties to

have this matter decided at an early day, I must content myself with simply stating my conclusions thereon.

" 1. Where the claim is for moneys received by the defendant, as agent for the plaintiff, and the moneys in the defendant's hands are the proceeds of the plaintiff's property, sold under such agency, there can be no doubt of the propriety of granting a remedy by injunction against such proceeds.

" 2. Such injunction should, however, only be applied to the actual proceeds and not other moneys of the defendant, and where the plaintiff, under an allegation of a fraudulent purchase and subsequent sale, seeks to recover more than the amount admitted to be such proceeds, the injunction should not be granted to cover the increased amount of sales. It may be upon the trial that the plaintiff will recover the proceeds of the sale in China, but until his right to it is established he has no right to an injunction for that sum.

" 3. Moneys paid by the defendant to the plaintiff on account of the sale should be deducted from the proceeds, and the injunction only apply to the balance. Moneys claimed by the defendant by way of set off are not to be included as payments.

" The alleged payments of $3,883 50, and $4,000 are not denied by the plaintiff. If these items have been received by the plaintiff, they should be deducted from the $14,000, the alleged proportion of sale for the plaintiff's share, and the balance must remain in court under the injunction. This will leave about the sum of six thousand dollars.

" An injunction is granted restraining the defendant from interfering with the amount $6,000, which must remain in court to abide the event of this action. The balance of moneys in court may be repaid to the defendant by the clerk, and as to that and all other moneys, except the $6,000, the temporary injunction is dissolved.

" Costs of this motion to abide the event."

In accordance with the decision at special term, an order was entered that the injunction be so far dissolved " as to the moneys deposited by the clerk of this court in the New York

Life Insurance and Trust Company," as to permit the defendant to withdraw all except the sum of $6,000.

From this order the plaintiff appealed.

*Horace F. Clark* and *Charles A. Rapallo*, for the plaintiff, made and argued the following points :

I. The funds enjoined are the proceeds of the sale effected at Hong Kong, in China, of the two thirds of the ship "Mischief," which belonged to the plaintiff. The injunction does not purport to interfere with any moneys of the defendant, but enjoins property claimed to belong equitably to the plaintiff.

II. The allegation in the complaint is that the funds in question are the proceeds of the sale of two thirds of the ship "Mischief," which two thirds belonged to the plaintiff at the time of such sale, and were sold by the defendant as the agent of the plaintiff.

III. The affidavit on which the injunction was granted is more specific, and states the sale of the vessel at Hong Kong. It refers to the previous pretended sale to J. P. Haven at San Francisco, but alleges that that was in fact no sale. That Haven bought the ship in as agent of the defendant, and that the only actual sale of the ship which has taken place was at Hong Kong.

IV. The defendant sets up as a defence the sale in San Francisco. He alleges that it was an actual and *bonâ fide* sale to J. P. Haven, and that the sale at Hong Kong was made by Haven, and not for account of the plaintiff.

V. If the allegations of the defendant are substantiated, there is no foundation for the injunction even as to the $6,000. The whole fund belongs to Haven, and there is no reason for enjoining any part of it at the suit of the plaintiff.

VI. The whole question on this motion is whether the funds enjoined are to be deemed in equity the plaintiff's property? If there was an actual *bonâ fide* sale of the ship to Haven at San Francisco, the plaintiff has of course no interest in the proceeds of the sale at Hong Kong ; but if the sale at San Francisco was

a mere sham, Haven having acted for the defendant, and bid in the ship, then the equitable title was not changed by that transaction, and the sale at Hong Kong was really for account of the defendant and the plaintiff, and he is entitled to the two thirds of the proceeds of that sale, and is entitled to enjoin them in the hands of his agent.

VII. The court have the right to try that question. The allegations and denials of the defendant are not conclusive. If contradicted by the facts and circumstances of the case, and by the defendant's own admissions, the court should disregard them.

VIII. The affidavits and correspondence read on the motion show that the pretended sale at San Francisco was a mere sham, originally intended to furnish evidence of the amount of the claim of the plaintiff and defendant against Ogden and Haynes, and that the defendant afterwards fraudulently sought to turn it to his own advantage by using it as a pretext for appropriating to himself more than his share of the proceeds of sale at Hong Kong.

IX. The order modifying the injunction should be reversed.

*Francis F. Dykers* and *Theodore Sedgwick*, for the defendant, made and argued the following points:

I. The case divides itself into two branches, which are to be kept entirely distinct. 1. The good faith and fairness of the sale of the vessel by the defendant at San Francisco. 2. The right of the plaintiff to an injunction. · As to the first head and the general course of transactions between the parties, it is to be observed:

First. The defendant is charged in the complaint with a very gross fraud and a breach of trust and duty. His excellent previous character and standing as a ship master, his long residence here are clearly proved; they are to be taken into consideration, and in a case of doubt will incline the scales in his favor.

Second. The plaintiff has sustained no substantial injury.

He was willing that the vessel should be sold for $22,000, and did not wish her limited so high as $25,000. This is shown in his letter.

Third. The plaintiff's whole claim is inflated and exaggerated. He swears that the vessel sold at Hong Kong for $45,000, and alleges that she earned a large sum on her voyage from San Francisco to Hong Kong. It is clearly proved that she sold at Hong Kong for $30,000, and that she earned nothing on the voyage out to Hong Kong.

Fourth. The defendant's proceedings have all been in perfect good faith. Fay's affidavit and his own show that the sale was made in entire good faith—that an effort was made to obtain $25,000 for the vessel, and that if Havens bought her for $22,000, it was the result of an accident. Havens was not the defendant's agent in any way.

Fifth. The complaint and affidavit on which the injunction · was allowed, allege that the sale was fraudulent, and that Havens bought her in for account of the defendant. It being conclusively proved that this is not the case, that the sale was in good faith, and that if any agreement was entered into by and between Havens and the defendant, it was after the sale, it cannot now be contended, as it was by the plaintiff's counsel in the argument below, that assuming this state of things, Havens and Thompson had no right to make such an agreement. If this is the state of facts, then Havens is the necessary defendant and the principal one; it is an entire alteration of the claim.

Sixth. As to the affidavit of the plaintiff as to the facts, it need only be observed that in regard to the conversation with the defendant, it amounts—taking all the statements together —only to an allegation that he refused to say anything; and as to R. S. Havens' affidavit, he swears to altogether too much. It is impossible that he could know whether the vessel was bought in by J. P. Havens for his own account or not.

Seventh. The best that can be said for the plaintiff is that it is a disputed question of fact, and even if the court has the power to issue the writ of injunction, it should not be exercised

to the injury and perhaps the ruin of a respectable man, against whose solvency nothing is alleged or pretended. The plaintiff does not require the injunction for his protection. It may work the most serious injury to the defendant.

Eighth. In order to obtain payment of two thirds of $8,000 (the difference between $22,000, the sale at San Francisco, and $30,000, the sale at Hong Kong, for there is not a shadow of proof .that she sold for more than $30,000), say $5,333, the plaintiff has locked up the sum of $13,000, and only given security in the sum of $5,000. It appears by the defendant's answer, which is undenied, that he holds the plaintiff's note over due for $2,000. All this goes to show that an injunction in this case would be practically an abuse of the process of the court, even if the power existed.

II. But the court has no power in this case to issue an injunction.

First. Even if the court were satisfied on the whole facts that a clear case of breach of trust, or even fraud, were made out, that would furnish no ground for the issuing of an injunction. Fraud and breach of trust are good grounds for arrest, not for injunction.

Second. The whole subject of injunction now depends on the Code. Under the old system there could be no equity relief except on the ground of an account or discovery. (Story's Equity Jur. §§ 458, 464, 872 ; Edw. on Injunction, p. 1.) But that mode of proceeding. is now done away with, and now, in order to obtain or sustain an injunction, the court must be satisfied that the defendant is about to remove his .property, or to do some other act, pending the litigation, calculated to prejudice the plaintiff. This is not pretended in the case. The defendant is an old resident of New York, an old ship master and ship owner, and highly respected and perfectly solvent, not about to remove his property nor to do any act calculated to injure the plaintiff. (See Code, § 219 ; *Pomeroy* v. *Hardenbrook,* 5 Prac. R. 437; *Perkins* v. *Warren,* 6 ib. 341.)

Third. The mere refusal by. the defendant to comply with the

Merritt *v.* Thompson.

plaintiff's demand to pay over the proceeds of the Hong Kong sale to the plaintiff, is no injury to the plaintiff such as the Code contemplates for the purpose of authorizing the court to grant injunctions. On this construction an injunction could be obtained in every litigated case.

Fourth. It is very important not to exceed the power granted by the Code to issue injunctions. The injunction in the case should be vacated with costs.

By the Court. Woodruff, J.—The complaint in this action is founded upon a claim by the plaintiff, that the defendant, as the agent of the former, under a full authority for that purpose, sold two thirds of the ship " Mischief," and as such agent, being trustee for the plaintiff, received the proceeds of the sale and brought them to New York, and refuses to pay them over to the plaintiff, but has placed them on deposit with his banker. And upon an averment that he has reason to apprehend, and does apprehend, a misappropriation and disposal of the proceeds by the defendant, and a removal thereof from the reach of the process of the court, he prays an injunction and receiver. The complaint also prays an account of the earnings of the ship while in the defendant's possession unsold.

An injunction being ordered, a motion was made at the special term to dissolve the injunction, which being granted in part, the plaintiff has appealed to the general term.

In support of the motion to dissolve the injunction, it is urged, assuming that the defendant is the plaintiff's agent and trustee, and as such, liable to account, and assuming also that he holds the plaintiff's property, received by him in the special agency with which he was intrusted, and which property he, in violation of his duty, and in fraud of the plaintiff's rights, refuses to account for and pay over, that inasmuch as a bill of discovery is not now permitted by our Code of Procedure, there is no ground here for any equitable relief. That the cause is to be regarded as a mere action at law, and that unless the case made be one in which, if the action was an ordinary action to recover a debt, an injunction would, under

section 219 of the Code, be proper, e. g. when the defendant is about to dispose or remove his property to defraud his creditors, or to do some other act in violation of the plaintiff's rights, tending to render the judgment ineffectual, the injunction cannot be sustained.

It is, I apprehend, an entire mistake to say that because the bill for a discovery is no longer to be used, therefore a plaintiff cannot have a discovery. It is only the mode of obtaining a discovery that is altered. It is no longer necessary to apply by bill to a court of equity for a discovery where that alone is sought. The defendant may now be orally examined by order. But where the equitable power of the court is invoked to compel an accounting, to enforce a trust, to prevent a fraudulent misapplication of funds, or a misappropriation of property held as trustee, the jurisdiction of the court is as ample as it was before the Code. And the circumstance, that in ascertaining the facts by which the exercise of that jurisdiction is to be guided, the defendant may now be orally examined, and that discovery by answer cannot be compelled for the mere purpose of discovery, is quite immaterial. Even now the right of appeal to the defendant's conscience, as to all the grounds of relief, is preserved as fully as before the Code. And, that jurisdiction upon the grounds just mentioned existed before the Code, is not questioned.

But it is urged that under the Code, if a clear case of fraud and breach of trust are established, these only entitle the complainant to an order of arrest, and not to an injunction.

I find no warrant for this limitation of the power of the court. It is true that in an action for money had and received by the defendant in a fiduciary capacity, or where the defendant has been guilty of a fraud in contracting the debt or incurring the obligation upon which the action is founded, he may be arrested; but nothing in the chapter of the Code relating to that subject (chap. 1, title 7, part 2), makes that the sole and only mode of procedure. If the case was one which furnished grounds for equitable interposition by injunction, the right to resort, at the plaintiff's option, to the ordinary legal process by

arrest would not affect the power to enjoin. It may be that the court would not arrest the person and enjoin the act which was threatened, but that I apprehend would be a question of discretion which the court would take care to exercise so as not to work oppression or unnecessary hardship.

Once more, it is insisted that by the Code (§ 219) the injunction cannot be sustained unless the court are satisfied that the defendant is about to remove his property, or do some other act, pending the litigation, calculated to prejudice the plaintiff.

This clause of the Code is held to relate to an injunction applied for after an action has been commenced, and where the grounds of the injunction appear during the litigation. (See *Perkins* v. *Warren*, 6 How. Pr. R. 341 ; *Malcolm* v. *Miller*, 6 Pr. R. 456), and does not apply to a ground for injunction which existed at or before the action was brought.

The language of the section referred to appears to me to be ample to sustain the power exercised in this case, *e. g.* when it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce injury to the plaintiff, etc., an injunction may be granted, etc.

This very general language would seem to provide for every case in which a temporary injunction was proper before the Code. Indeed, it was not, in my opinion, the design of the legislature to abridge the power of the courts, as courts of equity, to grant that provisional relief theretofore had by injunction. On the contrary, the last clause of section 219 is a plain enlargement of the power.

The law recognizes the existence and use of this remedy, and changes its form to an order of the court or judge, instead of requiring the unnecessary additional form of a writ. And it has been repeatedly held that the Code has not impaired the general power of the court to enjoin where an injunction was before proper. (*Howard* v. *Ellis*, 4 Sand. 369 ; *Malcolm* v. *Miller*, 6 How. Pr. R. 456.) Hence, in an action between part-

ners, brought for the purpose of a dissolution and a settlement of the co-partnership affairs, the payment of the debts, etc., an injunction to restrain either, and even both, of the co-partners, may be as proper now as it ever was. (See *McCracken* v. *Ware*, 1 C. R. 215.) Nor is it denied that an injunction would be granted now as before to restrain a trustee or agent when he attempts to transfer the funds or property in his hands to the prejudice of the party beneficially interested, or to restrain a party who is abusing his trust. Nor generally to restrain fraud, and protect and uphold a trust against the wrong of a trustee.

That the present defendant, in so far as he has received the proceeds of two thirds of the ship in question, was a trustee for the plaintiff is not denied. And entertaining the views above suggested, I perceive no lack of jurisdiction, nor any reason in the provisions of the Code, for denying the injunction, if the facts are as claimed by the plaintiff.

In respect to the merits, I adopt fully the language of the first judge at special term, that when the claim is for the proceeds of a sale made by the defendant, as agent for the plaintiff, in the hands of the agent, and identified as the very proceeds of the plaintiff's property, but which the defendant refuses to deliver, "there can be no doubt of the propriety of granting the injunction." Indeed, I do not understand the defendant's counsel as denying this proposition if the case is not altered by the Code.

In such case, the plaintiff has title to the very subject of the suit—and any use of the same, or transfer or removal thereof, and any appropriation to his own use, or otherwise than a delivery to the plaintiff, is, as matter of law, an injury to the plaintiff—a palpable violation of his legal and equitable rights; and the moment the relation of principal and agent is established, and the possession of the property is shown to be in trust for the plaintiff as a fiduciary matter, or as I also think where a trust results, as in this case, from the sale of a ship owned jointly by the plaintiff and the defendant, and the whole proceeds come to the hands of the defendant, as the agent of both, the court will enjoin, upon the distinct ground of restraining a

breach of trust and commission of a fraud upon the party beneficially interested. And in such case it is not sufficient for the fraudulent agent to say, if I do wrong I am of sufficient responsibility to make reparation in damages. The plaintiff is entitled to the very subject of the action, and a court of equity will decree that specific subject to him on final judgment if he establish his case, and for that reason they will, if need be, restrain any act which may place the property beyond their reach. In other words, they will secure to the plaintiff his own property, and not leave him in such case to pursue the defendant for damages, however responsible he may be.

For these same reasons I fully concur in the opinion given at special term, that the injunction in such case should only be applied to the actual proceeds of the sale of the plaintiff's property, and not to other moneys of the defendant. As to such other moneys, the plaintiff has no specific claim thereto. If it turn out, upon an accounting, that the defendant is a debtor to the plaintiff for funds misapplied, and again invested in other property so that it can still be identified as in equity belonging to the plaintiff, it may doubtless be reached, but otherwise the plaintiff in that respect would be like any other creditor.

I do not, however, perceive the justness of the conclusion that, when the plaintiff seeks to recover more than the amount admitted to be the proceeds of sale, the injunction should not be granted so as to cover any greater amount of proceeds than is so admitted.

On the other hand, it appears to me that the plaintiff's right to the injunction does not at all depend upon the defendant's admission; if it did, there could be no injunction, unless the defendant admitted the proceeds to be in his hands.

The inquiry is, as it appears to me, Has the plaintiff made such a case upon all the proofs laid before the court, as shows his own title to the proceeds in question, with such reasonable certainty as renders the exercise of the discretion of the court by granting the injunction, *pendente lite*, proper to restrain a fraudulent misappropriation thereof by the admitted trustee?

It is not denied that the defendant was employed in a fidu-

ciary capacity, with the most unqualified power to sell the ship in question.

It is not denied that he did sell that ship in China, and receive the proceeds of sale.

It is not denied that the property which was enjoined in the hands of the defendant's banker, and which was, by consent of the parties, brought into court, was the identical proceeds of that sale in China.

Upon this state of things, the application of the principles adopted below, as well as repeated by me, seem to render the continuance of the injunction, restraining the transfer or disposition of those proceeds, a matter of course, unless the defendant has, on his part, shown good cause to the contrary.

This he attempts to do, by averring that, before he took the ship to China, to wit, while in San Francisco, California, he sold the ship to one J. P. Haven, at auction, and that his agency and trusteeship for the plaintiff then ceased; and, in his subsequent taking the ship to China, he acted for himself and Haven, and not for the defendant. So that, in the China sale, he was not the plaintiff's agent or trustee in any sense whatever.

If this be so, or if the defendant has so far established this state of facts by his proofs laid before the court, on the motion below, as to overcome the proofs offered by the plaintiff, and the just inferences therefrom, I quite agree that the injunction ought not to embrace a larger sum than would be due to the plaintiff from the proceeds of the alleged sale at San Francisco, and that the order at special term should be affirmed.

But, after a careful consideration of the complaint, answer, affidavits, and correspondence, laid before the court, I am constrained to say that the defendant has failed to rebut the evidence which bears most strongly in the plaintiff's favor upon this question. His case rests, and, under the circumstances, at so great a distance from the scene of these sales, it may be necessarily rests, upon his own statement; and, if that stood alone opposed to the plaintiff's complaint and affidavit, we should no doubt regard it as a full denial of the plaintiff's

Merritt *v.* Thompson.

claim to any interest in the China sale, and a sufficient reason for the order made below. But the correspondence and affidavits of third persons throw very great doubt upon the truth of the defendant's answer, not necessarily impeaching its sincerity in all respects, but indicating that his answer is made upon some assumptions respecting his own powers and duty, and the legal and equitable rights of the plaintiff, which are erroneous.

That the defendant undertook to act for the best interest of the plaintiff is apparent from all the papers. That he professed so to act, and that he declared that whatever he did for himself he did for the plaintiff, is found in his letter, written a very few days before the alleged sale in San Francisco, and I may add to this, that whatever he did for himself touching the sale of the ship, and any of the terms and conditions of sale, the plaintiff had a right to regard as done for him also, whether the defendant so declared or not.

By the same letter, and in view of the proposed attempt to sell the ship at auction, in San Francisco, the defendant says, "If she does not bring over $25,000, I shall bid her in;" and declares his purpose, in that case, to take her to China, adverting freely and fully, in the same letter, to J. P. Haven, as his friend and adviser, who was. then employed in rendering him aid in his difficulties regarding the ship.

The ship did not bring $25,000 at the auction. The ostensible buyer was this same friend and adviser, J. P. Haven. The defendant immediately fits her out for China, and sells her there, without any evidence or even statement that Haven ever paid a dollar, and without sending home to the plaintiff any funds, until after his return from China to California with the proceeds of her China sale. In connection with these circumstances, the affidavit of Richard P. Haven comes with great force in support of the claim that the ship was bid in by J. P. Haven for the defendant, in pursuance of the intention which the defendant, before the sale, declared. He testifies that he was in the employment of his brother, J. P. Haven, and had the supervision of his books and of his business at the time of the said alleged sale; that his brother acted as the

defendant's adviser, and that the ship was put up for sale in pursuance of his advice, for the purpose of fixing the amount of the owner's claim against other parties who had broken their contract of purchase, and that J. P. Haven was not the purchaser of the ship for his own account, but bid her in for account of the defendant.

The statement contained in the letter received by the plaintiff, from San Francisco, is not strictly evidence, but, in circumstances of doubt, may very properly be referred to as strengthening the claim of the plaintiff to be protected by injunction against an apprehended fraud. Such letters, containing statements of what took place thousands of miles distant, may properly be used temporarily, before time can be had to obtain formal proof, to sustain a remedy which is purely provisional in its character, and which does not conclude either party; and, from this, it seems that J. P. Haven makes no claim whatever to any interest in the ship, but declares that he acted for the defendant; and even without placing much stress upon this letter itself, the half admission testified to by Mr. Wakeman, involved in the defendant's claim that he had a right to become the purchaser, is of nearly equivalent force.

There are other circumstances of suspicion in the discrepancy between the defendant's letters and his account; and, upon a review of the whole case, his statement of the transaction seems to me so far overcome, that I am constrained to regard the plaintiff as having, with reasonable certainty, established that the defendant did in fact buy in the ship, at San Francisco, for account of all the owners; and, therefore, that the proceeds of the China sale now admitted to be here and under the injunction, belong to him.

Upon the taking of proofs, the defendant may show the contrary; or, upon the final hearing, the plaintiff may possibly fail in sustaining his present claim; but, in my judgment, he shows himself entitled to the temporary injunction to hold the property until the case can be heard and determined upon the proofs.

It is true that the defendant's denial is broad and comprehen-

sive enough to meet the whole claim to the China sale, and is in some degree corroborated; not, however, so as in my mind to countervail the case made by the plaintiff.

I think, therefore, that the order at special term should be reversed, but without costs on appeal.

DALY, J.—I concur in the above.

INGRAHAM, FIRST J.—I still retain the opinion that the injunction should not apply to the proceeds of the sale of the vessel in China. All the allegations upon which the plaintiff seeks to charge the defendant with fraud as to the sale in San Francisco are denied by the defendant, and where such is the case, I understand the rule to be to deny the motion for an injunction.

If the sale at San Francisco was not fraudulent, then the proceeds of that sale belong to the plaintiff, and not the one in China; and, before the plaintiff is entitled to hold the defendant for that, he must establish his right to it by a judgment.

When, on the decision of this motion, it was said that the injunction should not apply to more than the amount admitted to be the proceeds of the sale, reference was made to the admissions of the plaintiff in his affidavit as well as those of the defendant. Both parties admit the sale in San Francisco. Whether that sale was a valid one or not is to be settled on the trial of the case. But, as all the alleged fraud is fully denied by the defendant, the injunction should not be extended to any other moneys than the proceeds of such sale.

The majority of the court concurring, the order made at special term, in part dissolving the injunction, was reversed, without costs on the appeal.